CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2823

CHARLES VAVRA,

*Plaintiff-Appellant*,

*v.*

HONEYWELL INTERNATIONAL, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-06847 — **Jorge L. Alonso**, *Judge*.

ARGUED MAY 21, 2024 — DECIDED JULY 10, 2024

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Honeywell International, Inc. required its employees, including Charles Vavra, to complete online unconscious bias training. Vavra refused and was fired. He then sued, alleging that he was terminated in retaliation for his opposition to the training and complaints about an email from the head of his business unit that he found offensive. The district court granted summary judgment in

Honeywell's favor. Because Vavra's retaliation claims are meritless, we affirm.

I

On September 24, 2020, John Waldron, the President and CEO of Honeywell International, Inc.'s Safety and Productivity Solutions unit, sent an email entitled "Continue to Fight for Social Justice" to all of his employees, including Charles Vavra. In the email, Waldron reacted to a grand jury's decision to not indict the police officers involved in the death of a Black woman, noting that he "can only imagine how our Black colleagues are feeling" and stressing, "Racial bias is real. Don't kid yourself. Each of us has unconscious bias within us." He then promised that the unit would "take tangible actions to make a difference," including "listening sessions," "upping our game when hiring ensuring 100% of the time that the interview panel and candidates are diverse," and "other actions." In conclusion, he remarked, "My hands and heart are open to each of our Black, Hispanic, Asian, and LGBTQ colleagues. I stand with you." Vavra found this email to be racist and discriminatory, but he did not share his concerns with anyone at the time.

In November, Honeywell's Diversity, Equity, and Inclusion office rolled out an Unconscious Bias Awareness initiative. The initiative included mandatory, online unconscious bias training, which all Honeywell employees needed to complete by February 25, 2021. The announcement email contained a link to the training, which was around 20 to 30 minutes long and entailed watching videos of different scenarios with a quiz at the end.

Vavra never clicked the link to access the training. Between November and February, Vavra received several automated reminders about the training, which became daily reminders five days before the February deadline. After the deadline passed, the daily reminders continued, but Vavra did not complete the required training.

Several individuals reached out to Vavra personally and asked him to complete the training. On March 2, Vavra's direct supervisor, Jeffrey Cortez, emailed Vavra asking him to complete the training. Later that day, Vavra received an email from Katie Becker, Honeywell's Human Resources Director, reminding him that the training was due and inquiring if there were any issues that prevented him from completing it. Vavra answered, "Yes, I do have issues completing this. I will be sending out an email shortly explaining why."

On March 8, Vavra sent an email detailing his objections to the training and Waldron's September 24 email. He claimed that Waldron was "making his non-white colleagues all victims and turning his white colleagues … into villains," and he asserted that neither "John Waldron nor anybody else gets to tell me I have unconscious bias." Vavra also declared, "I AM NOT taking this training because it's a joke, and I'll use John Waldron's email as proof of it." Becker replied to Vavra, promising to review his objections, and she shared his concerns with others in HR.

Honeywell continued to send Vavra automated daily reminders about the training, and his superiors urged him to take the training, but he maintained his refusal. After Vavra's March 8 email, Cortez spoke with Vavra about the training and told him that he did not perceive it as racist, noting that it included a video of a situation in which a white male is

subjected to unconscious bias. Chris Maines, the Vice President of Engineering, also met with Vavra and encouraged him to complete the training, emphasizing that failing to do so would be considered insubordination. On March 23, in response to Maines asking him if he had changed his mind about the training, Vavra sent an email reiterating his refusal and stressing, "Whatever the consequences are of that decision [to refuse], I will accept." Vavra also remarked that he "found John Waldron's 9/24 [email] incredibly offensive, discriminatory and racist" and requested that his email be "considered an 'official' discrimination claim." Because he never viewed the training and did not know its content, his objections were based on what he thought the training would be like given Waldron's email, noting that he did not want to be "'trained' to be someone like" Waldron.

On March 30, Vavra emailed Becker requesting a meeting to discuss where things stood as to his position on the training. Cortez then scheduled a call with Vavra and Becker for April 7. Before the meeting, Cortez pleaded, "Chuck, are you sure you won't take the training?" But Vavra remained steadfast in his refusal. During the meeting, Cortez informed Vavra that he would be terminated unless he took the training. Vavra confirmed that he would not do so, and he was terminated.

Vavra sued Honeywell, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Illinois Human Rights Act, 775 ILCS 5/1-101, et seq. Honeywell moved for summary judgment, which the district court granted. Vavra now appeals.

II

We review the district court's grant of summary judgment de novo. *Rongere v. City of Rockford*, 99 F.4th 1095, 1102 (7th Cir. 2024). To prevail on a Title VII or IHRA retaliation claim, Vavra must prove: (1) he engaged in activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Id.* at 1104. We agree with the district court that his opposition to the training was not protected activity and, even if his objections to Waldron's email were protected activity (which we need not decide), he failed to establish a causal connection between those objections and his termination.

A

For an employee's protests of an employer's actions to be protected from retaliation by Title VII (or the IHRA), the employee must have "an objectively reasonable belief that the action [he] opposed violated the law." *Id.* This makes sense. To permit otherwise would "encourage the filing of utterly baseless charges by preventing employers from disciplining the employees who made them." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir. 1989) (quotation omitted).

For that same reason, we hold that an employee must have some knowledge of the conduct he is opposing for his belief to be objectively reasonable. Here, that means Vavra must have held an objectively reasonable belief that the training violated the law based on his knowledge of its contents. But Vavra had no such knowledge because he never accessed the training or otherwise discovered what it entailed, so his belief that it violated Title VII or the IHRA could not have been

objectively reasonable. Vavra assumed, based on Waldron's email, that the training would vilify white people and treat people differently based on their race. But that presumption is purely speculative and insufficient to make his belief objectively reasonable, especially because there is no indication Waldron had any involvement in creating or selecting the training's contents. Moreover, the only reliable information Vavra had regarding the contents of the training contradicted his assumptions. His supervisor, Cortez, who had taken the training, told Vavra that it was not racist and featured a white victim of unconscious bias. A belief is not objectively reasonable if it requires rejecting such concrete information in favor of conjecture.

B

Even if Vavra's complaints about Waldron's email were protected activity, he failed to demonstrate a causal connection between the complaints and his termination. To establish causation, Vavra must "offer evidence that a retaliatory motive was a 'but-for cause of the challenged employment action.'" *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 915 (7th Cir. 2022) (quotation omitted).

In an attempt to prove Honeywell's retaliatory motive, Vavra first argues that it failed to follow its own policies when investigating his complaints. Indeed, "[a]n employer's unusual deviation from standard procedures" can be circumstantial evidence of retaliatory intent, *Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017), but Honeywell did not fail to follow its policy that it will promptly and thoroughly investigate all reports. Honeywell had what it needed to thoroughly investigate Vavra's complaint: Waldron's email. And Becker's response to Vavra's complaints and her subsequent

discussions with others in HR about his concerns satisfied the policy.

Vavra also argues that the timing of his termination was suspicious. Recall that he was fired on April 7, around a month after his March 8 email and two weeks after his March 23 email, which both complained about Waldron's email. But evidence of suspicious timing, alone, is "generally insufficient to establish a retaliatory motivation." *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022). Further, "any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action." *Id.* That is the case here. Honeywell earnestly and repeatedly sought Vavra's compliance with the training requirement, and it was only upon his final, absolute refusal to take the training that it decided to terminate him. This alternate basis for his termination belies any inference that he was discharged for his complaints about Waldron's email.

AFFIRMED